324-0680, the people of the state of Illinois, Appali versus Giuseppe Ressa, appellant. Matthew, if you're ready to proceed. May I please the court? I'm Akshay Matthew with the Office of the State Appellate Defender, and I represent the defendant Giuseppe Ressa. This case comes before this court on a second stage dismissal of Mr. Ressa's post-conviction petition. This court previously remanded this case specifically to address two claims of ineffective assistance of counsel. First, counsel's failure to raise and properly advance a fitness claim, and second, counsel's failure to retain an expert to offer mitigating evidence at sentencing. On remand, the circuit court erred in dismissing these claims because it failed to apply the proper standard of review. At the second stage of post-conviction proceedings, all well-pleaded facts in the petition and accompanying affidavits must be taken as true, unless they are affirmatively refuted by the record. Rather than accepting Mr. Ressa's affidavits as true, the circuit court improperly weighed the evidence. Additionally, the circuit court's ruling fundamentally misunderstood the nature of Mr. Ressa's claim, most notably with regards to the difference between sanity and fitness. Turning to the first claim, the fitness claim, trial counsel provided ineffective assistance by failing to investigate and raise a bona fide doubt as to Mr. Ressa's fitness-to-stand trial. The circuit court justified its dismissal by noting that Mr. Ressa's mental condition was raised before trial and that an insanity defense was explored by Dr. Murray. But in doing so, the lower court erroneously completed a sanity evaluation with a fitness determination. Sanity, of course, is a backward-looking analysis regarding the time of the offense, whereas fitness is a determination of the defendant's present ability to rationally understand the proceeding and assist in his defense. Dr. Murray evaluated Ressa for sanity and not fitness. I have a question. I usually don't ask many questions this early on, but isn't it accurate in this record that all of any evidence with regard to mental status all goes towards sanity and none of it is relevant, particularly to fitness? So what you're saying I agree with, but I don't know. It's odd that you're championing that because I don't think there's any evidence. I couldn't find any evidence in the record that would cause anyone to say counsel should have raised a fitness issue. But go ahead, tell me where that evidence is. That counsel should have raised a fitness issue? That comes from the post-conviction petition affidavits showing that there were issues of fitness and fitness. Specifically, Dr. Murray's affidavit and Ressa's own affidavit speaks to his inability to assist counsel. Does that answer your question, Your Honor? Yeah, I suppose. You can proceed. And the circuit court here did not accept those affidavits as true as it was required to at this stage. If it had, it would show a clear, substantial showing of a constitutional violation. Counsel, on this record, are you suggesting that the state would have had to get their expert to opine as to Dr. Murray's conclusions? I'm sorry, go ahead. Well, I mean, to reply, if the court has to presume that these are accurate statements, are they going to have to defend with some other affidavit or some other evidence, assuming the record doesn't already address it? If this goes to third stage? No, I'm talking about second stage. Second stage, you've alleged this. How could the state defeat your allegations at the second stage? It would have to be based on what's found in the record. I don't believe they can add evidence at the second stage, is my understanding. They would have to wait for, at the third stage, they can, of course. That's what you're asking for? Yes. That way, presumably, Dr. Cox would be called, and the state could call Dr. Murray or Dr. Lane or whomever to respond to those allegations made by Dr. Cox at the evidentiary stage, which is what this case needs. Because right now, with regards to fitness, the record is somewhat absent, except for Dr. Cox's affidavit. I don't believe he specifically interviewed Mr. Reza, but that's something that an evidentiary would take care of. The record, though, itself shows some bona fide doubt of fitness in the way Mr. Reza was acting. His writings, his affidavit, also shows that he had some strange beliefs, probably religious delusions would be the most accurate word for it. And these delusions would have impaired his ability to process information, communicate with his attorneys, and make decisions. Those facts should have also been taken as true and would have made a substantial showing that a bona fide doubt existed as to his fitness, satisfying the prejudice prong. Can I ask this question? Is there any what I would call objective evidence in this case that at the time of trial, when the defendant was in court repeatedly, was admonished as to the decision, whether to testify or not, interacted with the court, his attorney is interacting with him? Is there anyone at any point at the time that oftentimes in these cases, the jail sends a, you know, he's problematic, he's not taking his medication. There's always information in a fitness situation. Defense attorneys don't ever hesitate to raise this issue. I mean, it buys them time. It's important. It's so I'm asking at the time of this trial, did the court ever say anything? Did it observe anything? Did the defense attorney ever act like he couldn't communicate with his client? Did the jail or any ever send up a message that, you know, we're having trouble getting him up there? He's not cooperating. Anything about fitness, not insanity. I agree with you. Insanity is a completely separate issue. And you can be absolutely insane or not insane at the time of the crime. But plenty of people put on an insanity defense and may have all sorts of experts onto that. But when they go to trial, they're fit, they understand what they're doing at trials, two separate, completely separate issues. So what I want to know, is there anything in the record about what happened at the time? Any complaint, a scintilla of anything? That's my question. Dr. Lane, I believe it was in her testimony or in her affidavit or no, sorry, in our report said that he is able to know rationally that his thoughts are strange, essentially, and he covers up his in most thoughts. And that's sort of a the defendant, Mr. Reza, he would not outwardly express these because Do you understand that's a separate issue? His grandiose thoughts and religious things about children. Yeah, he may not tell that to people. The issue at fitness is, is he able to communicate with his lawyer, understanding what's going on and participate in his defense? That is, those are two completely separate concepts that you're, I think that you're referring to. That's why I know, I'm curious about what was happening, any complaints at the time of trial? Inherently, that is hard to know just from the record, because typically we don't encourage the defendant to speak his mind when he's represented by counsel. So there aren't going to be many opportunities in the transcript for that sort of a communication. When they're not fit, they generally won't necessarily listen to that advice, but okay. I guess it may, it depends on the person. Some, yeah, some people would maybe go more quiet and inward when, and it seems like a lot of his insanity would have or just was stress induced, and being arrested could have had an effect on that. But yeah, so the record may not show that, but it is shown in the affidavit presented by Mr. Areza that he, he expressed that he was unable to effectively communicate with his attorney. So that's, that's where we can hear his words when it was affidavit, which should be taken as true. Do your honors have any more questions with regards to this issue, before I move on to the second? I do not. Yeah. You can go on to the second issue, counsel. With regards to the second issue, it was that trial counsel was ineffective at sentencing for not retaining a sentencing expert. Here, counsel's entire strategy at the sentencing hearing was to receive probation. Despite making mental health the centerpiece of his argument, counsel inexplicably failed to retain any expert to evaluate Mr. Areza or testify in mitigation. Further, he did not call any family members to testify, and those family members were intimately aware of his long history of mental illness and family history of schizophrenia and severe abuse that he suffered. The circuit court dismissed this claim by stating that the two experts that testified at trial, Dr. Murray and Dr. Kane, had already testified about at the sentencing hearing, and the state claims that having a third expert would be merely cumulative. This argument misses the point because Dr. Murray and Dr. Kane were not retained by the defense to provide mitigation. They effectively served as witnesses in aggravation, testifying that Mr. Areza suffered from a pedophilic disorder and was a danger to the community. Dr. Cox's affidavit explains that a mitigation expert would have determined the severity of Mr. Areza's delusional disorder and related how those specific beliefs caused his actions. This would have provided an alternative interpretation to the state's and demonstrated that his actions were motivated by a severe mental illness rather than predatory sexual urges. Mr. Areza was prejudiced by this failure because he received the absolute maximum sentence possible under statutory limits. Mental illness, of course, is a statutory mitigating factor in Illinois, so had counsel properly investigated and presented this mitigating evidence, there is a more than reasonable probability that Mr. Areza would have received a much lower aggregate sentence, and there is no possibility of him receiving a higher sentence. Do your honors have any further questions? The allegations in Mr. Areza's petition and affidavits are not affirmatively refuted by the record. Taken as true, they make a substantial showing that he was denied effective assistance of counsel, both before trial and at sentencing. Therefore, we respectfully request that this court reverse the circuit court's dismissal and remand this matter for a third stage evidentiary hearing. Thank you. Counsel, as it relates to the second point, I did have a question, and that was, so is it effective for not hiring an expert? He's not going to, does he need to vet the expert first, or is he just going to go blindly and maybe have a third witness in aggravation for the state? Investigating the mental illness is also part of an effective assistance, so he should have talked to the expert about the illness. Go ahead. And you found an expert, so he presumably could have found an expert that agrees with your current expert? Yes, and I believe the attorney that found this expert was in the same law firm as his, I think, I believe, so yeah, he should have, he could have easily found this expert if he had investigated further. Thank you. Any other questions, counsel, or counsel, justice, any other questions? Love. Yeah, actually, Ms. Fleming, you're going to be able to make some statements here, not for prompt questions, but please go ahead if you're ready. Okay, good afternoon, your honors. Counsel, may it please the court. I apologize if there was a little of a disruption just now. The office dog is trying to get into my office. I'd like to start out talking about the standard at a second stage proceeding. Defendant must show a substantial showing of a constitutional violation, so all well pleaded facts in the petition are taken as true in the affidavits, but non-factual and non-specific assertions, which merely amount to conclusions, are not sufficient, and so our position is that the petition and affidavit did not sufficiently support a claim that the attorney was ineffective for failing to pursue an unfitness issue, and that also dovetails into what the judge is talking about that defendant takes issue with. The judge mentioned that the record was replete with instances of mental illness, not that he demonstrated unfitness, but his mental condition was raised before trial. It was raised during trial. Everyone was aware of those statements. The second district mentioned that in their opinion following his direct appeal, so all of that information was there, but nothing showed unfitness, and the things that we would normally look for, irrational behavior, his demeanor at trial, some representation by a party, we just don't have that here, and then on his second issue, I want to point out that although Dr. Cox was an affidavit supplied originally with the petition, when we were back on remand, the defendant was asking for a doctor from probation, and both of the doctors who testified at his sentencing were from probation, and I want to let the court know that during the time this appeal has been pending, defendant has completed his sentence, and so it is possible at this point that that sentencing issue would be moot. He is currently involved in a sexually violent person petition, and if the court has any further questions on that, I'm happy to talk about that more. I want to address Mr. Matthews, his position is that his affidavit, what is stated in there, is enough at Stage 2 to move this on to Stage 3, I guess along with Dr. Cox. So you want to address that with a little more specificity? Of course. The pages that defendant cites, he starts to page 1038 of the common law record, and the statement on that page is, the attorneys never questioned if voices or visions directed my trial decisions or impaired my ability to communicate with them or assist in my defense. He doesn't say then that those things are true. He doesn't say I wasn't able to assist in my defense. And then the second statement that defendant points to is on page 1042 of the common law record, and that statement is, my lack of sleep made it even harder for me to think unable to participate. I think a lot of us could say my lack of sleep makes it hard for me to clearly process information, and I have a giant Diet Coke beside me for that reason. And so those are the only two statements, and even the petition I went through at length, page 5, he just says my attorneys didn't explore fitness. Page 12, I didn't realize I was delusions. Page 16, the delusions likely prevented him from participating. Only on page 17 does he say persistent delusions left him unable to participate in his defense. But again, that is not factual. It's just a conclusion, and courts have been clear that conclusions are not enough. Counsel, what about the experts, though? Doesn't he have an expert saying that retroactive fitness examination would reveal that he would not fit, that there's a bona fide issue anyway of fitness at the time? Or does he? His, okay, his expert on page 1030 of the common law record says his review raises a bona fide doubt to him whether Mr. Ressa was able to meaningfully assist in his own defense. But he doesn't say the court would find a bona fide doubt. He doesn't explain why. He just uses those magic words. So, I mean, we've all seen the AB analysis, and whether is this a look-see, or is this a real evaluation for fitness? Are you suggesting that a look-see is not enough, that we need an actual finding, a bona fide finding? He says at the beginning of his report that he's just doing a limited review. He doesn't appear to be doing a full review, and he asked in the trial court for another expert to be appointed, and the court felt that the two independent experts were enough, because his focus was those were not my experts, but they were independent experts. They were not the state's experts. They were appointed by the court. Did that answer it? Thank you. I guess my ultimate question is, if they're able to provide professional expert testimony that he was unfit at the time, does that automatically get you to Stage 3? I don't think so, because it has to show that the trial court would have found a bona fide doubt. And so, when you weigh that against no party, a trial raising the issue, and no facts in the record that show or support that finding, I don't think it gets you there. Thank you. What about the issue of an expert at sentencing? An expert what, Your Honor? At the sentencing hearing, that they should have had an expert at Okay. Again, he is saying in his response that was filed in the trial court that he should have, that he wants a retroactive evaluation by a doctor from probation, which is exactly what we had, two doctors. And he's kind of guessing as to what an expert would say, and in the end, an expert could be harmful to him. A jury might find that the continued talk about his mental illness supports. Well, we're talking about the judge. This is, he's asking about sentencing hearing, no? Oh, yeah, yeah. I'm sorry. We were talking about something. Well, counsel, you did raise the fact that the sentence has been served. So, is that your mootness argument that why should we go back to sentencing because it's already been served? It's already served, correct. And he doesn't point to anything else that would change the trial. He just guesses that that expert would change things somehow. Thank you. Counsel, or I'm going to keep doing it. It's been a long day. Justices, do you have any other questions? No. I do not. All right. Mr. Matthew, rebuttal. Thank you. Just to quickly address the mootness, it very well might end up moot, but as it is right now, it's not because the state's pursuing SVP proceedings, and he would have to serve as MSR, which is part of his sentence. So, there could be some effect on his sentence. It's possible that by the time a third stage is done, it could be moot, but as of right now, I don't believe it to be moot. With regards to probation and wanting probation to be the experts, and probation, one of the – there was a probation expert, but the issue is the probation never examined him for fitness. That wasn't within their purview. If they analyzed him for fitness, they could have found even the two experts that testified, they could have found him unfit. And the probation department, you're talking about when they're doing pre-trial services, so they had interaction with him before trial? No. It was pre-sentencing. There was a probation that had interaction or interview with him. So, the fact that he's even looking for probation experts, that in itself wouldn't even be disqualifying because probation didn't examine him for fitness. And plus, the state says they're independent witnesses, but at sentencing, they were called as experts by the state, so they were state's witnesses as well. And it seems that all of us here understand the difference between sanity and fitness, but that doesn't seem to be what happened below. Like, the court and counsel itself seem to conflate the two, and I'm... I don't disagree. And in that case, when counsel got the report that Mr. Reza was saying, he likely misunderstood that to mean he was also fit. In Reza's statement, they missed the part I was citing too, which is that also... I'm quoting here. Also, my thinking was consistently interrupted by persistent religious thoughts or messages which impaired my ability to process information. This is the key part, to communicate with my lawyers and to make decisions on my own throughout the time my case was pending and long before. I mean, that should be taken as true. That's not a conclusory statement. That's the... He's describing his ability to communicate with counsel at the time. Yes. And... That's all I have. Let's see if I have further questions. We would request that this court reverse the circuit court's dismissal on this matter for a third stage evidentiary. Counsel, thank you. Any other questions? Justices? No. All right. Thank you both. Well, thank you very much for your arguments, counsel, and we will take this case under advisement and issue a ruling in due course.